UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL MARCHAND, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 09-10433-LTS |
| TOWN OF HAMILTON, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL

March 25, 2010

SOROKIN, M.J.

The Plaintiff, Michael Marchand, brings suit against the Town of Hamilton and a number of its employees, alleging inter alia that he suffered psychological distress arising from various improper investigations of him conducted by, or at the instigation of, town officials.

Marchand now moves to compel the production of documents from Defendant Town of Hamilton which the Town has declined to produce on the basis of attorney-client privilege, attorney work product doctrine and/or privileges attaching by statute to meetings of the Board of Selectmen held in executive session. Docket # 79. Marchand seeks three categories of documents: minutes of meetings of the Board of Selectmen; a written report made by an outside attorney to the Board of the Selectmen; and, emails between various Town officials.

    I.    <u>Executive Sessions of the Board of Selectmen</u>

Marchand seeks disclosure of the minutes of Executive Sessions of the Board of

Selectmen.  Certain general principles govern their disclosure.  First, confidential communications between public officers and employees and governmental entities and their legal counsel undertaken for the purpose of obtaining legal advice or assistance are protected under the normal rules of the attorney-client privilege. Suffolk Const. Co., Inc. v. Division of Capital Asset Management, 449 Mass. 444, 450 (2007).  However, with regard to meetings of governmental bodies, the Supreme Judicial Court "view[s M.G.L. ch. 39] § 23B [the Open Meetings Law] as a statutory public waiver of any possible privilege of the public client in meetings of governmental bodies except in the narrow circumstances stated in the statute." District Atty. for Plymouth Dist. v. Board of Selectmen of Middleborough, 395 Mass. 629, 634 (1985).

There can be no doubt as to the continuing vitality of the District Atty for Plymouth decision.  In ruling that the public records law did not abrogate the attorney-client privilege for public entities, the SJC, after favorably citing District Atty. for Plymouth Dist., explained its different treatment of meetings with lawyers and documents to or from lawyers: "[t]hat the Legislature intended certain discussions between public officials and their counsel to take place in the open [i.e., at public meetings pursuant to the Open Meeting Law] does not imply that no communication between the public counsel and the public client can ever be confidential." Suffolk, 449 Mass. at 459, n. 20.  Thus, any protection from disclosure applicable to Executive Sessions convened by the Selectmen arises solely from the express statutory exemptions to the Open Meetings Law set forth in § 23B.

On July 26, 2007, counsel for Marchand wrote to Candace Wheeler, the Town Administrator. Docket 80-2 at 31-32.  While much of the letter concerned Marchand's need to

remain out of work due to his job-related stress and his intent to seek "injured on duty" status, Marchand's counsel also referred generally to many of the allegations forming the basis of the claims advanced in this action. He wrote that Marchand "has been the subject of baseless and scurrilous allegations of wrongdoing which have impugned his character and have caused him and his family a great deal of emotional distress." Id. at 31. He further stated that "despite a series of investigations and inquiries . . . which have cleared him of any wrongdoing, there has been no public pronouncement of the findings, resulting in further damage to [Marchand's] once impeccable reputation." Id. In addition, counsel wrote that "while Mr. Marchand is exploring his legal options and remedies against the Police Department and the Town, his preference at this point is to try and resolve these matters outside of the public eye if his concerns can be addressed to his satisfaction in an expeditious manner." Id. at 32. He also wrote that he would contact the Administrator in the "over the next few days" to try to discuss a resolution and stated that the matters he raised "if left unaddressed will undoubtedly result in legal action." Id.

In relevant part, the Massachusetts Open Meeting Law provides:

> All meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided by this section.
>
> No quorum of a governmental body shall meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as provided by this section.
>
> No executive session shall be held until the governmental body has first convened in an open session for which notice has been given, a majority of the members have voted to go into executive session and the vote of each member is recorded on a roll call vote and entered into the minutes, the presiding officer has cited the purpose for an executive session, and the presiding officer has stated before the executive session if the governmental body will reconvene after the executive session.
>
> Nothing except the limitation contained in this section shall be construed to prevent the governmental body from holding an executive session after an open meeting has

been convened and a recorded vote has been taken to hold an executive session.

Executive sessions may be held only for the following purposes:

. . .

(3) To discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the governmental body

. . .

A governmental body shall maintain accurate records of its meetings, setting forth the date, time, place, members present or absent and action taken at each meeting, including executive sessions. The records of each meeting shall become a public record and be available to the public; provided, however, that the records of any executive session may remain secret as long as publication may defeat the lawful purposes of the executive session, but no longer. All votes taken in executive sessions shall be recorded roll call votes and shall become a part of the record of said executive sessions.

M.G.L. c. 39 § 23B (emphasis added).

The exceptions delineated in § 23B are not to be used as a subterfuge to retreat from an open meeting into an executive session. District Attorney for Northern Dist v. School Committee of Wayland, 455 Mass. 561, 566 (2009) (citing District Attorney for the Northwestern Dist. v. Selectmen of Sunderland, 11 Mass.App.Ct. 663, 666 (1981)).  The burden of showing the need for a closed session rests with the governmental body. Id.  Governmental bodies may not circumvent the requirements of the open meeting law by conducting deliberations via private message – whether electronically, in person, over the telephone, or in any other form. Id. at 570-71.  Even where the governmental body goes into executive session legitimately, the minutes of the executive session may be kept secret only "as long as publication may defeat the lawful purposes of the executive session, but no longer." M.G.L. c. 39 § 23B; Foudy v. Amherst-Pelham Regional School Committee, 402 Mass. 179, 182 (1988).

The Town asserts that it went into executive session to discuss litigation strategy, as permitted by § 23B(3), in response to Marchand's letter. Docket # 82 at 5-6.  It is clear that litigation which is threatened, but not yet in suit, may serve as the basis for an invocation of §23B(3).  See Perryman v. School Committee of Boston, 17 Mass. App.Ct. 346, 352 (1983) (invocation of litigation strategy exception approved where the transcript of the open portion of the meeting showed discussion by the participants of legal issues presented by teachers' alleged misconduct and a statement by the teachers' attorney that "the School Committee is out on a limb on this matter and   .  .  .   the Perrymans will not stop here. This is a matter that certainly will come before a Superior Court judge this week on a restraining order.")

Although no such requirement is explicitly stated therein, Perryman has been interpreted by the Massachusetts Attorney General to require that litigation be clearly and imminently threatened prior to invocation of the exception. Open Meeting Law Guidelines of the Massachusetts Attorney General, at 22 n. 21 (citing Perryman, 17 Mass.App.Ct. at 352).  Not surprisingly, Marchand urges such an interpretation and argues that the litigation strategy exception is not applicable because Marchand's counsel's letter emphasized that he wished to resolve the matter short of litigation. See Docket # 80 at 7-8 (citing Perryman v. School Committee of Boston, 17 Mass. App.Ct. 346, 352 (1983); Doherty v. School Committee of Boston, 386 Mass. 643, 648 (1982)).  The Court need not reach the issue of the degree of imminence necessary to support invocation of the litigation strategy exception because it concludes that Marchand's counsel's letter of July 26, 2007, sufficed to indicate that litigation was imminent.  Marchand's counsel stated that Marchand was "exploring his legal options and remedies," that counsel would contact the town "over the next few days" and that if "his

concerns" (which were not limited to his injured-on-duty status, but rather included descriptions of the conduct forming the basis for his claims in the above-entitled action as well as his damages) were not "addressed to his satisfaction in an expeditious manner," then the matters raised "will undoubtedly result in legal action." Docket 80-2 at 31-32.

Marchand argues that even if the litigation strategy exception applies based upon his counsel's July 26, 2007, letter, the litigation imminently contemplated therein was his claim for injured on duty status, which claim has now been resolved with the result that the lawful purposes for the executive session has expired. M.G.L. c. 39 § 23B; Foudy v. Amherst-Pelham Regional School Committee, 402 Mass. 179, 182 (1988).  In reviewing the letter from Marchand, the Board of Selectmen may reasonably have anticipated, at that time, the full range of claims and litigation threatened in Marchand's counsel's letter and that legal proceedings were looming very soon.  Moreover, the Marchand's injured-on-duty status claim is inextricably intertwined with his present claims; much of the conduct giving rise to the present claims is the conduct that may have caused his injured-on-duty status.

Marchand concedes that after January 26, 2009, the Board of Selectmen could discuss litigation strategy in Executive Session, but nonetheless requests an in camera review of all of the minutes (both before and after that date) in light of findings of the District Attorney's Office that prior to Marchand's counsel's July 26, 2007, letter, the Board had violated the Open Meetings Law.  Because the Town appears to have withheld the minutes both on grounds of privilege and under the Open Meeting Law, the Town shall review the withheld minutes pursuant to the schedule defined below regarding the emails (at 10-11, infra) to determine whether it must disclose and produce any of the minutes in light of the Court's ruling.

Accordingly, at this time, I decline to consider whether an in camera review is warranted.

II. Urbelis Report

In April, 2009, the Town hired attorney Thomas Urbelis. Marchand seeks access to communications between Urbelis and the Selectmen, contending that the Town hired Urbelis to conduct an investigation, while the Town asserts that the communications are protected from disclosure by the attorney-client privilege. Docket # 80 at 15 ff; Docket # 82 at 9 ff.

The attorney-client privilege "extends to all communications made to an attorney or counselor, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinions in matters of law, in relation to his legal rights, duties, and obligations." F.D.I.C. v. Ogden Corp., 202 F.3d 454, 461 (1st Cir.2000) (citation omitted). As the party asserting the privilege, the Town bears the burden of demonstrating its applicability to the documents at issue. See Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1457 (1st Cir.1992).

According to a confirmation letter sent by Urbelis to the Chairman of the Board of Selectmen, the Board had hired him to make "report and recommendation[s] . . . related to legal issues as to the actions of Town Counsel and not to recommendations concerning personnel or management issues related to the performance of Town Counsel." Docket 82-1 at 16. He was to base his recommendations upon the facts recited in the Hayes and Pomeroy reports. Id. The Board's minutes of March 30, 2009, recite that, "Low entertained a motion to appoint Attorney Thomas Urbelis as independent counsel to look into the actions taken by Town counsel and provide advice on what steps the Board should take." Id. at 20. The minutes for the April 6, 2009, meeting reiterate that Urbelis was hired "to provide advice not for reinvestigation." Id. at

26. Similarly, the minutes of the April 13, 2009, meeting recite that "[t]he Board isn't trying to move forward with another investigation they are looking for legal advice on known facts." Id. at 30.

The Town has borne its burden by demonstrating that Urbelis was retained not as an investigator, but as an attorney and for the purpose of rendering legal advice based upon review of facts already disclosed to Marchand. The Board sought from Urbelis a confidential report (See Id. reciting that, "Bowler said since Urbelis is rendering legal advice his report to the Board would be confidential as covered by the attorney/client privilege") and the Board has treated the report as confidential since receiving it from Urbelis. Accordingly, the Attorney-Client privilege clearly protects the report and communications between the Town and Urbelis. In light of the foregoing, the Court perceives no need for an in camera review of this document.

III. Waiver of the Attorney Client Privilege and Emails

On October 30, 2009, the Defendants made the following response to a document production request from Marchand:

Request No. 3

Please produce copies of any and all documents, which relate to, reflect, concern or contain evidence of any communications by and between the Board of Selectmen and/or the Board of Selectmen and any third party from January, 2006 to the present which in any way relate to, reflect or refer to Michael Marchand.

Response No. 3:

The defendant objects to producing any communications by the Board of Selectmen and Attorneys Jack Collins, Leonard Kesten, and Thomas Urbelis. The defendant is waiving the attorney client privilege and will produce all communications between the defendant and Attorney Donna MacKenna/Brewer and all other third parties."

Docket 79-2 at 19.

Similarly, in response to Request No. 14, the Town asserted an objection based upon the attorney client privilege "with the exception of communication with attorney Donna Brewer as to which the privilege has been waived." Id. at 22; See also Responses to Request Nos.16, 17 (same). In response to many other document requests, the Town asserted an objection based upon the attorney client or work product privileges without any exception or limitation. The Town's October 30, 2009, response was signed both by attorneys Leonard Kesten and Douglas Louison. Id. at 26. Attorney Louison entered his appearance on behalf of the Town on that same day. Docket # 69. The Town produced approximately eleven emails pursuant to the above waiver. On December 1, 2009, Attorney Louison ended any further production.

On January 15, 2010, the Town served an Amended Response to the Request for Production of Documents. Docket 79-2 at 2. In the Amended Response, the Town revised its responses to Request Nos. 3, 4 and 14. The Town stated that it "revokes any prior purported waiver . . . demands the return of any documents previously provided." Id. at 3. In response to Request No. 14, the Town defined a more limited waiver of the privilege by conceding the production of otherwise privileged: "communications between Karen Wallace and attorney Donna Brewer as to which the privilege has been waived." Id. at 4. The Town made no revision to its responses to Requests Nos. 16 and 17. (apparently, there are no documents responsive to the request for communications between Brewer and Cullen).

According to an affidavit from Attorney Louison, as he reviewed documents and prepared the case, "it became apparent that there was some confusion as to what the Board of Selectmen had agreed to waive and/or invoke in terms of its attorney client privilege, specifically

regarding the Town's communications with its attorneys." Docket # 82-1 at 35. No further detail has been provided in the record.

This is not a case of the inadvertent production of eleven documents.[1] Nor does this case present the issue of the scope of a purported waiver of the attorney-client privilege arising out of the production of the eleven documents. See, e.g., In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corporation), 348 F.3d 16 (1st.Cir.2003). Rather, on the record before the Court, the Defendants made a knowing and considered limited waiver of the attorney client privilege – that is, they waived the privilege regarding "communications between the defendant and Donna McKenna/Brewer" – and they did so upon the advice of counsel, in a formal document signed by counsel. Pursuant to that waiver, counsel produced some documents (in particular, eleven electronic mail communications by and between Town Counsel Brewer and Defendant Bowler which occurred after July 27, 2007) further reflecting that considered choice. Those documents, which would not be subject to discovery under the more-limited amended waiver, have been utilized and marked as exhibits at deposition. While the choice made was not the only reasonable choice available, it was a reasonable choice. The waiver stands. In these circumstances, the Town may not waive the privilege and then subsequently reverse its waiver.

It is ORDERED that the Town shall review the disputed emails in light of the Court's rulings, to determine which emails it must produce. It shall produce any such emails to

---

[1] Accordingly, I have not analyzed the issue under the criteria established for such circumstances. However, the Town has not in any event established the requisite basis for protection from an inadvertent disclosure. See Santullo v. City of Woburn, 2008 WL 2778819 (D.Mass. 2008). The question here presented is not whether a waiver premised upon inadvertent disclosure may be cured, but rather whether the Defendants continue to be bound by the terms of explicit waiver language.

Marchand, along with a revised privilege log, within ten days. If Marchand remains dissatisfied with the Town's production, he may file a renewed Motion to Compel concerning the emails withheld. Any such motion shall be filed within twenty days of this Order. A response from the Defendants must be filed within thirty days of this Order. The Parties' memoranda relating to any such motion may not exceed ten pages.

## CONCLUSION

The Plaintiff's Motion to Compel (Docket # 79) is ALLOWED IN PART and DENIED IN PART, without prejudice, as described <u>supra</u>. It is ORDERED that the Town shall review its document production in light of the foregoing rulings and shall supplement its document production accordingly within ten days.

SO ORDERED.

　　/s / Leo T. Sorokin
Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE